**EAGLE LEASING CORPORATION et al.**

v.

**The HARTFORD FIRE INSURANCE COMPANY.**

**Civ. A. No. 7279.**

United States District Court,
E. D. Texas,
Beaumont Division.

Sept. 21, 1974.

Earl S. Hines, Brown & Hines, Beaumont, Tex., Donald A. Hoffman, George A. Frilot, III, Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, La., for plaintiffs.

H. Barton Williams, Deutsch, Kerrigan & Stiles, New Orleans, La., Leslie M. Ball, Wendell C. Radford, Benckenstein, McNicholas, Ball, Oxford & Radford, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, Chief Judge.

This is a suit on a contract of insurance. The assured has sued the insurer to recover the costs of successfully defending an earlier action in this court. The insurer resists on the basis that the policy in question expired prior to the event complained of in the prior action against the assured. The Court has concluded that the policy provided continuing coverage against the type of liability asserted in the prior action, and, therefore, the assured is entitled to recoup its costs of defense.

This case was tried to the Court on the basis of agreed stipulations of fact and briefs of counsel. While the Court took full cognizance of all of the stipulated facts, the following are the essential elements upon which the Court relied in reaching its judgment:

A fleet policy of marine insurance, No, 84 OM A18900, was issued and delivered in St. Louis, Missouri, to the plaintiffs, Eagle Leasing Corporation, Olin Corporation (formerly Olin Mathieson Chemical Corporation), and Nilo Barge Line, Inc., through the Lawton-Byrne-Bruner Insurance Agency Co. of St. Louis, Missouri, for a period beginning at noon, January 1, 1967, and extending for a period of three years, subject to the payment of annual renewal premiums. The coverage provided by the policy was set forth as follows: Section I—Hull and Machinery; Section II—Protection and Indemnity including Excess Protection and Indemnity; Section III—Cargo; Section IV—Charterer's Legal Liability. By endorsement dated January 10, 1968, the policy term was extended until January 1, 1971, and the policy was amended so that the sole subscribing underwriter was The Hartford Fire Insurance Company. The first annual premium for the vessels covered under the policy amounted to $251,016.58. All premium charges due The Hartford were timely paid.

In December, 1968, The Hartford, through the Lawton-Byrne-Bruner Agency, quoted to the plaintiffs an annual renewal premium price of $583,000.00. Plaintiffs declined to accept this quotation, and by January 27,

1969, obtained insurance with companies other than The Hartford.

On November 16, 1968, Barge NL–701, one of the vessels covered by the policy, sank in the Gulf of Mexico. Nilo Barge Line, Inc. immediately commenced search and salvage operations in an effort to raise and remove the sunken barge from the bottom of the Gulf. Such operations, interrupted only by adverse weather, were underway approximately four months until March 17, 1969, at which time further efforts were deemed to be economically inadvisable, and the sunken wreck was abandoned and sold.

On February 10, 1971, Sun Oil Company brought Civil Action No. 7082 on the docket of this Court, wherein Sun claimed that its tanker, the S/S WESTERN SUN, struck the sunken Barge NL–701 on February 14, 1969, resulting in damages in the amount of $389,781.-91. Liability was asserted against Nilo, et al., on the basis of negligent failure to promptly remove the sunken wreck. The case came on for trial before the Court on June 12, 1972 through June 15, 1972. This Court found in favor of Nilo, et al., and denied any recovery by Sun. Judgment to that effect was entered on January 29, 1973.

At the outset of the litigation by Sun against Nilo, et al., the Assureds made appropriate requests of The Hartford to protect, defend or indemnify in accordance with the policy. The Hartford refused, its position being that the duty, to protect and indemnify the plaintiffs existed only during the "currency" of the policy, which was claimed to have terminated on January 27, 1969. The controversy thus presented for the Court's determination centers on the question as to whether The Hartford's Protection and Indemnity policy (Section II) provided coverage because the policy was in effect when the barge sank, even though the premium term of the policy expired prior to the alleged striking of the wreck by the S/S WESTERN SUN.

The most significant element of this case is the provision of the Protection and Indemnity policy which affords coverage. It provides:

"It is agreed that if the Assured, as shipowners, shall have become liable to pay, and shall have in fact paid, any sum or sums in respect of any responsibility, claim demand, damages and/or expenses, or shall become liable for and shall pay any other *loss arising from or occasioned by any of the following matters or things during the currency of this policy* in respect of the ship hereby insured, that is to say:

(a) *Loss or damage* in respect of any other ship or boat, or in respect of any goods, merchandise, freight or other *things or interests* whatsoever, on board such other ship or boat, caused approximately or otherwise by the insured vessel, in so far as the same is not covered by the Running Down Clause in or attached to the policies on Hull and Machinery.

(b) *Loss or damage* to any goods, merchandise, freight, or other things or interests whatsoever, other than as aforesaid, whether on board said vessel or not.

(c) *Loss of life or personal injury*, and for payments made on account of life salvage.

(d) *Loss or damage* to any harbor, dock, graving, or otherwise, slipway, way, gridiron, pontoon, pier, quay, jetty, stage, buoy, telegraph cable, or other fixed or movable thing whatsoever or to any goods or property in or on the same.

(e) *Any attempted or actual raising, removal or destruction of the wreck of the insured vessel or the cargo thereof, or any neglect or failure to raise, remove or destroy the same.*

(f) *Liability for loss*, damage, or expense incurred in connection with or in resisting any unfounded claim by the master or crew or other per-

sons employed on the vessel named herein, or in prosecuting such persons in case of mutiny or other misconduct.

(g) *Net loss* due to deviation incurred solely for the purpose of landing an injured or sick seaman in respect to port charges incurred, insurance, bunkers, stores, and provisions consumed as a result of the deviation."

"This Company will . . . pay . . . the costs which the assured shall thereby become liable for and shall pay." (Emphasis supplied)

As the Court appreciates the quoted language, the policy provides coverage upon the occurrence of any of the listed *matters or things* during the premium term of the policy. The policy does not require, necessarily, that a *loss* occur during the policy premium term.[1] One of the "matters or things" listed in Section (e) is neglect or failure to raise, remove, or destroy the wreck of an insured vessel. Therefore, the policy, as it applies to this item, reads as follows:

"It is agreed that if the Assured, as shipowners, shall have in fact paid any sum in respect of any expenses arising from or occasioned by any neglect or failure to raise, remove, or destroy the wreck of the vessel during the currency of this policy, this Company will pay to the Assured the sum or sums so paid."

■ In the prior suit, Sun Oil alleged that there had been neglect in raising or removing the Barge NL–701. At the time of the alleged striking by the S/S WESTERN SUN, the Barge NL–701 had been wrecked approximately three months. Of this period, all but approximately two weeks occurred during the policy's premium term. Clearly, Sun's lawsuit charged neglect during the currency of this policy. Therefore, the policy provided coverage beyond question.

■ Reference to the other "matters or things" listed in Sections (a), (b), (c), (d), (f), and (g), only strengthens this conclusion. Each item refers to either "loss," "damage," "injury," or "liability." With respect to these, loss, damage, injury, or liability must have occurred during the policy premium term. However, as stated above, subsection (e) requires only that "neglect" occur during the policy premium term. The Court therefore finds and concludes that the intent of the parties was that the policy would provide continuing coverage with respect to claims arising from or occasioned by failure or neglect in raising, removing, or destroying a wreck of an insured vessel during the policy's premium term.

Insofar as equities are concerned, the Court has no doubt but that the decision announced herein is manifestly fair. Commencing immediately following the sinking of Barge NL–701 and continuing until March 17, 1969, Nilo performed "sue and labor" within the meaning of the Hull policy (Section I). Such search, salvage and removal efforts were directed toward minimizing losses occasioned by the sinking. Any savings achieved would have inured to the benefit of The Hartford, as Hull underwriter. Therefore, assuming the correctness of the Court's decision here, The Hartford stood to gain by removal of the wreck on two separate bases: (a) minimizing

---

1. The Court discerns that the adjective-prepositional phrase "during the currency of this policy" relates to "matters or things" and not to "loss." Rudiments of English grammar require that modifiers be placed nearest the word modified. Fowler, Modern English Usage (2nd ed., "Ambiguity," ¶ 21). Hodges and Whitten, Harbrace College Handbook (5th ed., p. 278); Strunk and White, The Elements of Style (12th printing, 1965, p. 24); Walsh, Plain English Handbook (rev. ed., 1959 § 435-A).

The Court is satisfied that the aforementioned basic guidelines for construction of an English sentence were well in mind when this policy was drafted; and if there had been an intention to require that a loss occur within the premium term, the policy would have read:

". . . any other loss during the currency of this policy arising from or occasioned by any of the following matters or things, etc."

losses through salvage, and (b) elimination of potential liability for injury to persons or vessels resulting from collisions with the sunken wreck. To permit The Hartford to reap the benefits of salvage or wreck removal while avoiding coverage for liability arising out of or occasioned by such efforts would be inequitable. Moreover, one could not reasonably expect a vessel owner to continue to purchase insurance on a sunken wreck. Clearly, the Court's decision here represents a just balancing of the equities.

  Each case involving a question of insurance coverage must be examined in the light of the specific insuring agreement. Resort to rules of construction is unnecessary when the contract itself is unambiguous and its meaning clear (as the Court has concluded is the case with this policy). 43 Am.Jur.2d Insurance § 259 (1969). But even when such rules are applicable, adoption of any reasonable construction favorable to the Assured is mandatory. 43 Am.Jur. 2d Insurance § 271 (1969). This rule is applicable particularly in the case of a time policy of marine insurance. Allen N. Spooner & Sons, Inc. v. Connecticut Fire Insurance Company, 314 F.2d 753, 755 (2d Cir., 1963).

Beyond these general rules, specific judicial precedent has been in the main unhelpful to the Court in deciding this case. The Court has not found or been cited to prior decisions involving substantially identical policy provisions and circumstances.

For the foregoing reasons, an interlocutory judgment will be entered in favor of the plaintiffs and against the defendant for the full amount of the costs, expenses and attorneys' fees incurred in defense of the suit by Sun Oil Company. If within a period of sixty days from the entry of this judgment the parties cannot agree as to the amount of the expenses and attorneys' fees reasonably incurred by the plaintiffs, the Court shall set this case for hearing with respect to those matters only. The Court defers making any determinations with respect to prejudgment interest, or penalties and attorneys' fees as provided under Missouri law for vexatious refusal to pay an insured loss until such time as the parties make a report to the Court.